# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

---

STEPHEN B. SHAYA, on behalf of
Himself and all others similarly situated,

                      Plaintiff,

v.

KYLIE NOFS, ZHU SHICAI, LUO
YANBING, LIN YIN, YANG ZHENLIN,
and JOHN DOE NOS. 1-25,

                      Defendants.

Case No. 24-cv-10670

Hon. Mark A. Goldsmith

---

## PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT

Plaintiff Stephen Shaya ("Shaya"), by and through his undersigned counsel, moves for entry of a default judgment against Defendants pursuant to Fed. R. Civ. P. 55(b)(2).  The undersigned certifies that none of the Defendants have appeared in this action, personally or through counsel, that a default of all Defendants has been entered by the Clerk of the Court (ECF No. 26), and that no known means exist for seeking concurrence in the relief sought by this motion.

WHEREFORE, Shaya requests this Court grant his motion and enter the grant him a default judgment providing:

    A. That default judgment is entered in favor of Shaya and against Defendants

        Kylie Nofs, Zhu Shicai, Luo Yanbing, Lin Yin, and Yang Zhenlin, on

Shaya' claims for conversion, money had and received, fraudulent misrepresentation, and civil conspiracy in the amount of $544,143.91; and

B. That a constructive trust is imposed over the cryptocurrency held in the accounts and wallets identified in Shaya's Complaint and in the custody of Binance Holdings Ltd up to the amount of $544,143.91, and that such assets be immediately delivered to Plaintiffs' counsel or their agent at their direction.

Respectfully submitted,                          Respectfully submitted,

ALTIOR LAW, P.C.                                 BISHOP PARTNOY, LLP

/s/ Matthew D. Smith                             /s/ Franklin I. Partnoy
Kenneth F. Neuman (P39429)                       Franklin I. Partnoy
Matthew D. Smith (P72969)                        (New York Bar No. 2557437)
Attorneys for Plaintiff                          Robert E. Bishop
401 S. Old Woodward, Suite 460                   (New York Bar No. 5641964)
Birmingham, MI 48009                             Attorneys for Plaintiff
(248) 594-5252                                   638 Independence Ave SE
kneuman@altiorlaw.com                            Washington, DC 20003
msmith@altiorlaw.com                             (202) 539-7061
                                                 frank@bishoppartnoy.com
Dated: November 4, 2024                          bobby@bishoppartnoy.com

## LOCAL RULE CERTIFICATION

I, Matthew D. Smith, certify that this document complies with Local Rule 5.1(a), including: double-spaced (except for quoted materials and footnotes); at least one-inch margins on the top, sides, and bottom; consecutive page numbering; and type size of all text and footnotes that is no smaller than 10-1/2 characters per inch

(for non-proportional fonts) or 14 point (for proportional fonts). I also certify that it
is the appropriate length. Local Rule 7.1(d)(3).

s/ Matthew D. Smith
Matthew D. Smith (P72969)
ALTIOR LAW, P.C.

## **CERTIFICATE OF SERVICE**

I certify that on November 4, 2024, I electronically filed the forgoing paper
with the Clerk of the Court using the ECF system which will send notification of
such filing to all counsel of record on the ECF Service List.

s/ Matthew D. Smith
Matthew D. Smith (P72969)
ALTIOR LAW, P.C.

## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

———————————

STEPHEN B. SHAYA, on behalf of
Himself and all others similarly situated,

        Plaintiff,

v.

KYLIE NOFS, ZHU SHICAI, LUO
YANBING, LIN YIN, YANG ZHENLIN,
and JOHN DOE NOS. 1-25,

        Defendants.

Case No. 24-cv-10670

Hon. Mark A. Goldsmith

_____

## BRIEF IN SUPPORT OF
## PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT

**TABLE OF CONTENTS**

STATEMENT OF ISSUES PRESENTED...............................................................ii

INDEX OF AUTHORITIES.............................................................................iii

INTRODUCTION ...........................................................................................1

RELEVANT FACTUAL BACKGROUND..........................................................2

    A.    Shaya is Subjected to Defendants' Pig Butchering Scheme .........................2

    B.    Inca Capital Confirms the Scheme and Traces the Stolen Assets................4

    C.    Plaintiff's Complaint, the TRO and Preliminary Injunction, and the Default of Defendants .........................................................................................5

    D.    Binance Confirms a Freeze and, Months Later, the Wallet Holdings ..........6

ARGUMENT ...................................................................................................7

    I.    Legal Standard for Default Judgments.....................................................7

    II.    Defendants Are Liable for Plaintiff's Claims ............................................8

        A.    Conversion (Count I) .......................................................................8

        B.    Money Had and Received (Count II) ...................................................9

        C.    Fraudulent Misrepresentation (Count III)...........................................10

        D.    Civil Conspiracy (Count IV) ...........................................................12

    III.    Plaintiff's Damages Can be Determined Without an Evidentiary Hearing 13

        A.    Shaya's Out of Pocket Damages are $396,626.30 ................................13

        B.    Shaya Should be Awarded $132,208.77 in Reasonable Attorney Fees .14

            1.    Applicable Law.................................................................................14

            2.    $132,208.77 is a Reasonable Award of Attorney Fees .........................15

                a.    Reasonable Hourly Rates ...............................................................15

                b.    Reasonable Hours Expended............................................................17

                c.    Consideration of the Upward and Downward Deviation Factors.......19

        C.    Shaya is Entitled to His Filing Fee as Taxable Costs............................21

        D.    Shaya is Entitled to Prejudgment Interest...........................................22

    IV.    The Court Should Continue Should Impose a Constructive Trust Over the Frozen Wallets and Order Seizure and Delivery of Assets Sufficient to Satisfy the Default Judgment ..................................................................................22

CONCLUSION................................................................................................25

## STATEMENT OF ISSUES PRESENTED

1. Should the Court order a default judgment in favor of Plaintiff Stephen Shaya and against Defendants Kylie Nofs, Zhu Shicai, Luo Yanbing, Lin Yin, and Yang Zhenlin, on Shaya' claims for conversion, money had and received, fraudulent misrepresentation, and civil conspiracy in the amount of $544,143.91?

   - Plaintiff answers: Yes

   - Defendants are in default and have not appeared.

2. Should the Court order that a constructive trust is imposed over the cryptocurrency held in the accounts and wallets identified in Shaya's Complaint and in the custody of Binance Holdings Ltd up to the amount of $544,143.91, and that such assets be immediately delivered to Plaintiffs' counsel or their agent at their direction?

   - Plaintiff answers: Yes

   - Defendants are in default and have not appeared.

# INDEX OF AUTHORITIES

## Cases

*Antoine v. Atlas Turner, Inc.*, 66 F.3d 105 (6th Cir. 1995)........................................7

*Astrove v. Doe*, 2022 U.S. Dist. LEXIS 129286 (S.D. Fla. Apr. 22, 2022) ..............9

*Bandyopadhyay v Obei*, 2023 U.S. Dist. LEXIS 33382 (SD Fla, Feb. 28, 2023)...23

*Blum v. Defendant*, 2023 U.S. Dist. LEXIS 235592 (N.D. Fla. Dec. 13, 2023) .......9

*Brown v. Brown*, 338 Mich. 492 (1953) ........................................................... 12, 13

*Citizens Ins Co v Delcamp Truck Ctr, Inc*, 178 Mich App 570 (1989)....................8

*Conte v Gen Housewares Corp*, 215 F3d 628 (6th Cir. 2000) ...............................22

*Dep't of Agric. v. Appletree Mktg., L.L.C.*, 485 Mich. 1, 779 N.W.2d 237, 244
    (2010)....................................................................................................8, 9

*Dubey v Mandoza*, 2024 U.S. Dist. LEXIS 189784 (SD Fla, Oct. 18, 2024) .........24

*Dunn v. Bennett*, 303 Mich. App. 767 (2014)............................................................8

*Ehman v. Libralter Plastics, Inc.*, 207 Mich. App. 43, 523 N.W.2d 639, 639 (1994)
    ...................................................................................................................13

*Int'l Outdoor, Inc v SS Mitx, LLC*, 2023 Mich. App. LEXIS 8906 (Mich. App. Dec.
    7, 2023) ....................................................................................................14

*Kammer Asphalt Paving Co v East China Twp Sch*, 443 Mich 176; 504 NW2d 635
    (1993)................................................................................................. 23, 24

*MacDonald v Thomas M Cooley Law Sch*, 724 F3d 654 (6th Cir. 2013) ..............11

*McPherson v Suburban Ann Arbor, LLC*, 2024 U.S. Dist. LEXIS 34372 (ED Mich,
    Feb. 28, 2024) ..........................................................................................24

*Moreno v. City of Sacramento*, 534 F.3d 1106 (9th Cir. 2008) ..............................19

*Pirgu v United Servs. Auto. Ass'n*, 499 Mich. 269 (2016) ........................ 15, 19, 20

*Sommers-Wilson v Samsung SDI America, Inc*, 2019 U.S. Dist. LEXIS 206024 (ED Mich, Nov. 27, 2019) ............................................................................ 18, 21

*Sorel v Crantz*, 362 Mich 154; 106 NW2d 757 (1961) ...........................................13

*Trevor v Fuhrmann*, 338 Mich 219; 61 NW2d 49 (1953) ................................ 10, 13

*Urbain v. Beierling*, 301 Mich. App. 114 (2013) ............................................. 12, 13

*Vesligaj v Peterson*, 331 F App'x 351 (6th Cir. 2009) ..............................................8

*Warsop v. Cole*, 292 Mich 628 (1940)....................................................................12

*Ypsilanti Charter Twp v Kircher*, 281 Mich App 251; 761 NW2d 761 (2008) ......14

## **Statutes**

28 USC §1920 ...........................................................................................................21

MCL 600.2919a(1)(a) ...............................................................................................14

MCL 600.6013(8) ......................................................................................................22

## **Other Authorities**

Michigan State Bar's 2023 Economics of Law Report ...........................................16

MRPC 1.5(a) ..............................................................................................................15

## **Rules**

Fed. R. Civ. P. 54(b)(1)............................................................................................21

Fed. R. Civ. P. 55(a)...................................................................................................7

Fed. R. Civ. P. 55(b)(2)........................................................................... 1, 2, 7

Fed. R. Civ. P. 62(a)....................................................................................24

Fed. R. Civ. P. 64(a)....................................................................................23

Fed R. Civ. P. 64(b) ...................................................................................23

## **INTRODUCTION**

This case concerns the theft of cryptocurrency using a scheme known as "pig butchering." Using fake identities, offshore bank accounts, and legitimate and illegitimate cryptocurrency exchanges, Defendants perpetrated a scheme to convert and fraudulently obtain $396,626.30 in money and cryptocurrency from Plaintiff, Stephen Shaya ("Shaya"). Defendants did so by promising to invest this sum in cryptocurrency, and falsifying substantial returns on these investments. The returns were fake and used to defraud Shaya into continuing to transfer large amounts of money with reports of false profits.

On March 15, 2024, Shaya filed his complaint against Defendants in this action. (Exh A: 3/15/24 Complaint). Through the efforts of Plaintiff, his counsel, and their tracing experts, the continued transfer of Shaya's stolen assets and cryptocurrency was halted through this Court's March 18, 2024 Temporary Restraining Order (the "TRO") and later Preliminary Injunction. (ECF Nos. 4, 10). As of March 22, 2024, Binance Holdings Ltd ("Binance") – the custodian of 299 of the cryptocurrency wallets identified in Plaintiff's Complaint and this Court's TRO – acknowledged its implementation of a "freeze" of the subject wallets in its custody.

Following service in accordance with this Court's Order permitting alternative service (ECF No. 21), the Clerk of the Court entered the default of the Defendants on June 5, 2024. (ECF No. 26). Since that time, Plaintiff's counsel has worked to

obtain information from Binance concerning the value of the cryptocurrency frozen pursuant to this Court's TRO and Preliminary Injunction.  This is because the frozen cryptocurrency is the only feasible source of recovery from Defendants given the nature of their scheme.  As of October 18, 2024, Binance's counsel confirmed that the value of the cryptocurrency held in the 299 "frozen" wallets is approximately Six Hundred Thousand Dollars ($600,000.00).

While Shaya and his counsel had hoped the value of the frozen cryptocurrency would be sufficient to afford meaningful relief on a class basis, that is not the case. Based on tracing conducted by Plaintiff's experts, the total loss of similarly situated victims would exceed Fifty Million Dollars ($50,000,000.00).  Because the only feasible means of class recovery would be through the approximately $600,000 in frozen cryptocurrency, the recovery for class members would be *de minimis* in relation to their losses if any after expenses and administrative costs of proceeding on a class basis.  For these reasons and those stated below, Shaya moves for entry of a default judgment in his individual capacity pursuant to Fed. R. Civ. P. 55(b)(2).

## **RELEVANT FACTUAL BACKGROUND**

### **A.      Shaya is Subjected to Defendants' Pig Butchering Scheme**

On July 24, 2023, Defendant Kylie Nofs ("Nofs") contacted Shaya through Facebook. (Exh. A: Complaint, ¶23).  Nofs appeared to have common Facebook friends with Shaya, as well as relatives in Michigan. *Id*. Nofs stated that she studied

2

at Stanford University and lived in San Francisco. *Id*. Nofs online presence supported the appearance that these statements were legitimate. *Id*.

Nofs subsequently communicated with Shaya about investing and trading in cryptocurrency, and persuaded Shaya to invest using a purported trading platform using the website Coinbitjscz.top (the "Coinbit Platform"). (Exh. A, ¶24). Defendants represented to Shaya that these transactions involved transfers of cryptocurrency through his Coinbit Platform account, with his User ID ("UID") 18177. (*Id*., ¶25). Shaya thereafter engaged in what Defendants represented were cryptocurrency transactions using the Coinbit Platform. (Exh. A, ¶26). During December 2023, Plaintiff transferred increasing amounts to accounts controlled by Defendants. *Id*. The details of Plaintiffs' wires to accounts controlled by Defendants for his cryptocurrency "investments" are set forth below. (*Id*., ¶27).

| Date | Amount (US$) | Recipient Name | Account Number |
|------|--------------|----------------|----------------|
| 11/3/23 | 14,000.00 | Lin Yin | 40286331681 |
| 12/8/23 | 65,000.00 | Yang Zhenlin | 273819581888 |
| 12/12/23 | 146,000.00 | Zhu Shicai | 794648808888 |
| 12/22/23 | 171,621.30 | Luo Yanbing | 923154785888 |
| Total | 396,621.30 | | |

(*Id*., ¶27). Each of these wires referenced UID 18177, Shaya's purported Coinbit account. *Id*. In response to these wires, Nofs sent Plaintiff images of "confirmations" showing that she had invested funds in various cryptocurrencies. (*Id*., ¶29).

After Shaya transferred funds to the Coinbit Platform, Defendants represented that he had earned significant profits from cryptocurrency trading, but that he would

need to deposit additional funds in order to withdraw his money. (Exh. A, ¶30). Defendants communicated to Shaya that his total profit as of December 18, 2023 was more than $3.4 million, but that he would need to pay a "handling fee" to withdraw funds. *Id.* Shaya's final wire, in the amount of $171,621.30 was sent in response to the request to pay this "handling fee," as instructed by Defendants. *Id.*

On December 30, 2023, Defendants informed Shaya that he would need to pay an additional 10 percent "risk deposit" to confirm that his account "is a normal account." (Exh. A, ¶31). On January 8, 2024, Defendants provided Plaintiff with account address information for him to send a test transfer of $5 from his account at Coinbase. (Exh. A, ¶32). Plaintiff sent these test funds, and Defendants confirmed receipt, as indicated by Plaintiff's screenshots depicted in the Complaint. *Id.*

## B.   Inca Capital Confirms the Scheme and Traces the Stolen Assets

Shaya eventually contacted Inca Capital ("Inca") to begin an investigation of Defendants and their use of the Coinbit Platform to "invest" in cryptocurrency. (*Id.*, ¶33). Charles Zach ("Zach") and Inca have been investigating "pig butchering" schemes for over two years. (Exh. B: Zach Declaration, ¶3). The investigation by Inca and Zach established that the Coinbit Platform is a fake cryptocurrency trading platform through which Shaya's assets were transferred, and that Defendant Nofs' identity is fake. (Exh. A, ¶34; Exh. B, ¶¶11-13). Inca's investigation also revealed that the cryptocurrency proceeds of Shaya's "investments" were part of two

blockchain "clusters" controlled by Defendants and used to send "investments" converted through the fake Coinbit Platform through a web of transactions designed to hide their trail. (Exh. A, ¶¶35, 40; Exh. B, ¶¶8-10, 13).  Inca traced and connected Defendants' transactions, followed a trail of transactions, and identified the cryptocurrency wallets that held converted funds from the scheme to which Shaya fell victim. (Exh. A, ¶40; Exh. B, ¶13).  Those cryptocurrency wallets are identified in Exhibit A to Shaya's Complaint. (Exh. A;  Exh. B, ¶¶8-10; 13-23).[1]

### C.    Plaintiff's Complaint, the TRO and Preliminary Injunction, and the Default of Defendants

On March 15, 2024, Shaya filed his Complaint in this action. (Exh. A: Complaint).  In it, Shaya asserted claims arising from Defendants' "pig butchering" scheme for conversion, money had and received, fraudulent misrepresentation, and civil conspiracy. *Id*.  Shaya brought these claims both individually and as a putative representative of a class of similarly situated victims. *Id*.  The relief sought by Shaya included monetary damages, as well as the "[i]mpos[ition of] a constructive trust over, and order the return of, any remaining stolen assets and proceeds derived from the same to Plaintiff and the Class Members," and an "[a]ward [of] attorney fees and costs incurred in prosecuting this action." (*Id*., pp. 35-36).

---

[1] A detailed analysis of the methodology and support for Inca's conclusions concerning tracing the location of Plaintiff's stolen assets is set forth in Paragraph 8-10 and 13-23 of Zach's Declaration. (Exh. B, ¶¶8-10; 13-23).

On March 18, 2024, this Court entered its Temporary Restraining Order (the "TRO") enjoining the transfer of any cryptocurrency or other assets held in the wallets identified in Exhibit A to the Complaint. (ECF No. 4).  On April 2, 2024, the Court issued its Preliminary Injunction, which continued to enjoin the transfer of assets in the wallets identified in that Order. (ECF No. 10).  On May 7, 2024, this Court entered its Order Authorizing Alternative Service of Process on Defendants Pursuant to Fed. R. Civ. P. 4(f)(3). (ECF No. 21).  On May 8, 2024, service was effectuated in accordance with the Court's May 7, 2024 Order. (ECF No. 22).  On June 5, 2024, the Clerk's Entry of Default was entered against each of the Defendants for failure to plead or otherwise defend. (ECF No. 26).

### D.   <u>Binance Confirms a Freeze and, Months Later, the Wallet Holdings</u>

On March 22, 2024, Binance confirmed receipt of this Court's TRO and that it had placed a "voluntary freeze" on 299 of the wallets identified in the Complaint and TRO in its custody.  (Exh. C: Smith Declaration, ¶13).  Once Binance confirmed the freeze of the wallet holdings, Shaya's counsel requested details concerning the value of the assets frozen. (*Id.*, ¶14).  For months, Binance did not provide this information. *Id.*  After Shaya's counsel issued a subpoena to Binance, undersigned counsel was contacted by attorney Thomas McKay of Morvillo Abramowitz Grand Iason & Anello PC as Binance's outside counsel. (*Id.*, ¶15).  On October 8, 2024 and

October 18, 2024, Mr. McKay confirmed that the total value of the assets held in the frozen wallets was approximately $600,000.00. (*Id.*, ¶16).

The tracing conducted by Inca Capital identified total losses by victims similarly situated to Shaya in excess of $50,000,000.00. (*Id.*, ¶17). Based on the value of assets frozen through this Court's TRO, the relief that could be afforded to a certified class would be *de minimis*, if any, in proportion to class victim's losses after the costs of administering a class action in this matter. (*Id.*, ¶18). Accordingly, Shaya and his counsel do not believe certifying a class in this action is appropriate or in the best interest of putative class members. (*Id.*, ¶19).

## **ARGUMENT**
## I.   **Legal Standard for Default Judgments**

Upon the Clerk's entry of defendant's default under Fed. R. Civ. P. 55(a), that defendant is deemed to have admitted all well-pleaded allegations related to liability. *Antoine v. Atlas Turner, Inc.*, 66 F.3d 105, 110-11 (6th Cir. 1995). Allegations regarding damages, however, are not taken as conclusively established. *Id.*, at 110. After entry of default, Fed. R. Civ. P. 55(b)(2) requires a plaintiff to move for entry of a default judgment. Under this rule, "[t]he court *may conduct* hearings or make referrals … when, to enter or effectuate judgment, it needs to: (A) conduct an accounting; (B) determine the amount of damages; (C) establish the truth of any allegations by evidence; or (D) investigate any other matter." Fed R. Civ P. 55(b)(2) (emphasis added). "This provision, by its terms, allows but does not require the

district court to conduct an evidentiary hearing." *Vesligaj v Peterson*, 331 F App'x 351, 354-55 (6th Cir. 2009).  Ultimately, the decision to grant a default judgment is within the sound discretion of this Court. *Antoine, supra,* 66 F.3d at 110-11.

## II.   **Defendants Are Liable for Plaintiff's Claims**

Defendants' liability for each of Shaya's claims has been established through Defendants' default. These claims are addressed in turn below.

### A.   **Conversion (Count I)**

Under Michigan law, conversion "consists of any distinct act of domain wrongfully exerted over another's personal property in denial of or inconsistent with the rights therein."  *Dep't of Agric. v. Appletree Mktg., L.L.C*., 485 Mich. 1, 13-14, 779 N.W.2d 237, 244 (2010).  "Conversion may occur when a party properly in possession of property uses it in an improper way, for an improper purpose, or by delivering it without authorization to a third party." *Id.*, at 244-45.  Furthermore, "an action may lie in conversion of money provided that 'there is an obligation to keep intact or deliver the specific money in question, and where such money can be identified.'" *Dunn v. Bennett*, 303 Mich. App. 767, 778 (2014) (Citation omitted). "[I]t is not necessary that the money should be specifically earmarked for its return." *Citizens Ins Co v Delcamp Truck Ctr, Inc*, 178 Mich App 570, 575 (1989).

The admitted allegations in Shaya's Complaint establish Defendants' liability for conversion of his cryptocurrency and "investments."  Defendants lured Shaya to

send Defendants $396,626.30 to "invest" in cryptocurrency for his benefit. (Exh. A, ¶¶23-27). This money was used to purchase cryptocurrency. (*Id.*, ¶28). Rather than hold the cryptocurrency for Shaya's benefit in his account, Defendants proceeded to convert and transfer these assets through the blockchain. (*Id.*, ¶¶28, 36-37, 43). In doing so, Defendants converted Shaya's property by "us[ing] it in an improper way, for an improper purpose, or by delivering it without authorization to a third party." *Appletree Mktg.*, *supra*, at 244. Shaya's cryptocurrency is specific, identifiable property subject to conversion. *Astrove v. Doe*, 2022 U.S. Dist. LEXIS 129286, at *6-7 (S.D. Fla. Apr. 22, 2022) ("[t]he cryptocurrency assets at issue are specific, identifiable property and can be traced in JOHN DOE's assets in the Destination Addresses or elsewhere."); *accord Blum v. Defendant*, 2023 U.S. Dist. LEXIS 235592, at *4-5 (N.D. Fla. Dec. 13, 2023).

For each of these reasons, Shaya is entitled to a default judgment as to liability on his claim for conversion.

## B.   Money Had and Received (Count II)

A claim "for money had and received is essentially an equitable action, founded upon all the equitable circumstances of the case between the parties, and if it appear, from the whole case, that the defendant has in his hands money which, according to the rules of equity and good conscience, belongs, or ought to be paid, to the plaintiff, he is entitled to recover." *Trevor v Fuhrmann*, 338 Mich 219, 223-

24; 61 NW2d 49 (1953). "[A]s a general rule, where money has been received by a defendant under any state of facts which would in a court of equity entitle the plaintiff to a decree for the money, when that is the specific relief sought, the same state of facts will entitle him to recover the money in this action." *Id*.

Here, Defendants obtained $396,626.30 from Shaya through their "pig butchering" scheme and fraud discussed in detail above. (Exh. A, ¶¶23-27, 32). All but $5.00 of this amount was paid by bank wires to Defendants. (*Id*., ¶27). Defendants have no legal entitlement or basis in equity to retain these monies or the cryptocurrency purchased with the same. Based on these facts, "[D]efendant[s] ha[ve] in [their] hands money which, according to the rules of equity and good conscience, belongs, or ought to be paid, to the plaintiff, [and] he is entitled to recover." *Trevor, supra*, 338 Mich at 223-24. Consequently, Defendants' liability for money had and received is established.

### C.    Fraudulent Misrepresentation (Count III)

The elements of fraudulent misrepresentation under Michigan law are as follows:

> (1) the defendant made a material representation; (2) the representation was false; (3) when the defendant made the representation, it knew that it was false, or made the representation recklessly, without any knowledge of its truth, and as a positive assertion; (4) the defendant made the representation with the intention that it should be acted on by the plaintiff; (5) the plaintiff acted in reliance on the representation; and (6) the plaintiff suffered injury due to his reliance on the representation.

*MacDonald v Thomas M Cooley Law Sch*, 724 F3d 654, 662 (6th Cir. 2013) (citation omitted).  "An additional requirement for element five is that the plaintiffs' reliance on the alleged misrepresentation must have been reasonable." *Id*. (citation omitted).

The allegations in Shaya's Complaint establish Defendants' liability for fraud. Nofs misrepresented her identity to Shaya as well as the Coinbit platform as a legitimate cryptocurrency trading application. (Exh. A, ¶¶23-24,  ¶¶39).  Nofs misrepresented to Shaya "that she engaged in cryptocurrency trading[,] could assist Plaintiff to invest through the Coinbit Platform," and "that she would help Plaintiff, lend Plaintiff funds, and invest alongside Plaintiff using the Coinbit Platform." (*Id.*, ¶5).  Defendants misrepresented that the monies Shaya caused to be wired to Defendants his Coinbit account "18177" were for his investment in "cryptocurrency transactions using the Coinbit Platform." (*Id.*, ¶¶25-27).  To induce Shaya to wire additional monies, Defendants further misrepresented that his total profit from his investments was more than $3.4 Million but that he was required to pay a "handling fee" of $171,621.30 to withdraw those funds. (*Id.*, ¶30).

All of these representations were false, as "Coinbit is a fake cryptocurrency trading platform and Defendant Nofs is a fake identity." (*Id.*, ¶34, 39).  Defendants' representations concerning the purpose and intended use of Plaintiff's … funds and assets was false, and Defendants knew their representations to Plaintiff … were false when they were made." (*Id.*, ¶71).  Moreover, "Defendants made these false

representations with the intention that Plaintiff … would rely upon them and act on them by transferring Plaintiff's … funds and assets." (*Id.*, ¶72). Shaya reasonably relied on Defendants' misrepresentations and made "investments" in cryptocurrency. (*Id.*, ¶¶5-6, 23-27, 72). As a result of Defendants' misrepresentations, Shaya suffered as damages discussed below. (*Id.*, ¶27, 32, 73).

For these reasons, the admitted allegations in Shaya's Complaint entitle him to a default judgment as to liability on his claim for fraudulent misrepresentation.

### D.    Civil Conspiracy (Count IV)

Michigan law recognizes civil conspiracy liability where, "a combination of two or more persons, by some concerted action, to accomplish a criminal or unlawful purpose, or to accomplish a lawful purpose by criminal or unlawful means." *Urbain v. Beierling*, 301 Mich. App. 114, 131 (2013). Once a conspiracy is established, "whatever was done in pursuance of it by one of the conspirators is to be considered as the act of all, and all are liable irrespective of the fact they did not actively participate therein or the extent to which they benefited thereby." *Brown v. Brown*, 338 Mich. 492, 503 (1953), *quoting Warsop v. Cole*, 292 Mich 628, 636 (1940).

As alleged in Shaya's Complaint, Defendants combined to defraud and convert money and cryptocurrency from Shaya. (Exh. A, ¶¶6-7; 23-27). Based on their representations, Shaya wired and transferred $396,626.30 to bank accounts in the names of Defendants Lin Yin, Yang Zhenlin, Zhu Shicai, and Luo Yanbing, for

investment in cryptocurrency, which Defendants represented were used for "cryptocurrency transactions using the Coinbit Platform." (*Id.*, ¶¶26-27). Defendants' combining to accomplish their "pig butchering" scheme was unlawful, and each is jointly and severally liable for Shaya's claims set forth above. *Brown, supra*, 338 Mich. at 503; *Urbain*, *supra*, 301 Mich. App. at 131.

## III.   <u>Plaintiff's Damages Can be Determined Without an Evidentiary Hearing</u>

### A.   **Shaya's Out of Pocket Damages are $396,626.30**

Under Michigan law, "[t]he general rule for the measure of damages for conversion is the value of the converted property at the time of the conversion." *Ehman v. Libralter Plastics, Inc*., 207 Mich. App. 43, 45, 523 N.W.2d 639, 639 (1994) (citation omitted). The Michigan Supreme Court has likewise affirmed and held that "[a] permissible measure of damages in an action of fraud … is recovery of the out-of-pocket loss of the plaintiff and he is permitted to recover from the person whose false representations induced him to part with his money or valuable property." *Sorel v Crantz*, 362 Mich 154, 156-57; 106 NW2d 757 (1961).  Damages recoverable for a claim of money had and received is the money sent to Defendants, which would be inequitable for them to retain. *Trevor, supra,* 338 Mich at 223-24.

Shaya's out-of-pocket damages for each of his claims are the same.  As set forth in Shaya's Complaint and Declaration, the total out of pocket losses suffered as the result of Defendants' scheme was $396,626.30.  (Exh. A: Complaint, ¶¶27,

13

32; Exh. D: Shaya Declaration, ¶¶27, 32).  This is comprised of the $5.00 worth of cryptocurrency sent from Shaya's Coinbase account, as well $396,621.30 in wires sent at the direction of Defendants. (Exh. A, ¶¶27, 32; Exh. D: ¶¶27, 32).   For these reasons, Shaya is entitled to damages of $396,626.30 from Defendants.

**B.**     **Shaya Should be Awarded $132,208.77 in Reasonable Attorney Fees**

### 1. Applicable Law

Under Michigan law, "a trial court has authority to award attorney fees in an action in which the moving party incurred the fees as a result of another party's fraudulent or unlawful conduct." *Int'l Outdoor, Inc v SS Mitx, LLC*, 2023 Mich. App. LEXIS 8906, at *34 (Mich. App. Dec. 7, 2023) (for publication), *citing Ypsilanti Charter Twp v Kircher*, 281 Mich App 251, 286-287; 761 NW2d 761 (2008). Accordingly, Shaya may "seek attorney fees associated with prosecuting its claim against [Defendants] on the basis that [Defendants] engaged in fraudulent or unlawful conduct that forced [Shaya] to prosecute [his] claim." *Id*., at *34-35.  MCL 600.2919a(1)(a) also provides for a statutory award of "reasonable attorney fees" for "[a]nother person's … converting property to the other person's own use."

In assessing a party's request for attorney fees, Michigan courts must first (1) determine the reasonable hourly rate customarily charged in the locality for similar services, and (2) then multiply that rate by the reasonable number of hours expended in the case to arrive at a baseline figure.  *Pirgu v United Servs. Auto. Ass'n*, 499

Mich. 269, 281 (2016).   The Court then considers the following factors "... to determine whether an up or down adjustment is appropriate,"

> (1) the experience, reputation, and ability of the lawyer or lawyers performing the services,
>
> (2) the difficulty of the case, i.e., the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly,
>
> (3) the amount in question and the results obtained,
>
> (4) the expenses incurred,
>
> (5) the nature and length of the professional relationship with the client,
>
> (6) the likelihood, if apparent to the client, that acceptance of the particular employment will preclude other employment by the lawyer,
>
> (7) the time limitations imposed by the client or by the circumstances, and
>
> (8) whether the fee is fixed or contingent.

*Pirgu*, *supra*, 499 Mich at 282.

## 2.   $132,208.77 is a Reasonable Award of Attorney Fees

Shaya retained Altior Law, PC and Bishop Partnoy, LLP on a contingency basis. (Exh. C: Smith Declaration, ¶3).  Pursuant to the written fee agreement, Shaya agreed to pay Altior Law, PC and Bishop Partnoy, LLP one-third of any recovery obtained. *Id*. Thus, if Shaya is awarded $396,626.30 in damages, his actual attorney fees owing will be $132,208.77. This is a reasonable attorney fee based on the lodestar calculation and applicable MRPC 1.5(a) factors as set forth in *Pirgu*, *supra*.

### a.     Reasonable Hourly Rates

Kenneth Neuman is the managing partner of Altior Law, P.C. and has been a licensed attorney in Michigan for 38 years. (Exh. C: Smith Declaration, ¶5).  Mr. Neuman's standard hourly rate is $645/hour. (*Id.*, ¶8).  Matthew Smith is a partner at Altior Law, P.C., and has been a licensed attorney in Michigan for 15 years. (*Id.*, ¶4).  Mr. Smith's standard hourly rate is $395/hour. (*Id.*, ¶7).  Attorneys Franklin Partnoy and Robert Bishop are shareholders of Bishop Partnoy, LLP. (Exh. E: Partnoy Declaration, ¶3).  Mr. Partnoy has been licensed to practice law for over 31 years. (*Id.*, ¶4).  Mr. Bishop has been licensed to practice law since January 2019. (*Id.*, ¶6).  Mr. Partnoy and Mr. Bishop's blended rate is $1,250/hour for expert and litigation-related work they have performed during the previous two years. (*Id.*, ¶9).

The Michigan State Bar's 2023 Economics of Law Report provides the following rates for attorneys with Shaya's counsels' experience:

| Years in Practice | Mean | 75th Percentile | 95th Percentile |
|---|---|---|---|
| 6-10 | $322/Hour | $385/Hour | $585/Hour |
| 11-15 | $330/Hour | $395/Hour | $575/Hour |
| 31-35 | $369/Hour | $450/Hour | $645/Hour |
| 35+ | $339/Hour | $400/Hour | $650/Hour |

(Exh. F: SBM Report, p. 8).  For civil litigators, the mean, 75th percentile, and 95th percentile rates are $351/hour, $425/hour, and $625/hour, respectively. (*Id.*, p. 10).

Based on their respective years in practice, and in consideration of counsels' respective experience and standing discussed below, Shaya contends that a reasonable hourly rates for Mr. Neuman and Mr. Partnoy is $600 per hour, and $395

per hour for Mr. Smith and Mr. Bishop.  This is lower than Mr. Neuman, Mr. Partnoy, and Mr. Bishop's standard hourly rates set forth above.

### b.    Reasonable Hours Expended

Altior Law, P.C. has spent 289.4 attorney hours in pursuit of the claims in this case, as reflected in the detailed billing summary attached to the Declaration of Matthew D. Smith.  (Exh. C: Smith Declaration, ¶6).  229.3 of these hours were expended by Matthew Smith, and 60.1 of these hours were expended by Mr. Neuman. *Id*.  Mr. Partnoy and Mr. Bishop, each expended at least 75 hours in pursuit of this action based on a review of contemporaneous records of their work. (Exh. E: Partnoy Declaration, ¶8).

Of Altior Law, P.C.'s 289.4 hours expended in this action, 183.2 of those hours were expended between March 1, 2024 and April 30, 2024.  (Exh. C: Smith Declaration, ¶10). The bulk of these hours were dedicated to preparing the Complaint in this action, preparing the Motion for Temporary Restraining Order and to Show Cause, attending the Court's show cause hearing which led to the issuance of the Order for Preliminary Injunction, preparing the Motion for Alternative Service of Defendants, and resolving the dispute with non-party Alt 5 Sigma concerning its cryptocurrency wallet that was subject to this Court's TRO. *Id*.  This time also involved communicating with Binance and other exchanges to give effect to this Court's TRO and in communicating with law enforcement concerning the same. *Id*.

17

The additional time expended by Altior Law, P.C.'s attorneys was focused on its efforts to obtain information from non-party Binance concerning the frozen cryptocurrency to determine the viability of proceeding on a class basis, investigating and determining the scope of the potential class with the assistance of Inca Digital, preparing to move to certify a class prior to learning of the insufficient assets held by Binance, and ultimately moving for default judgment. *Id*.

Bishop Partnoy, LLP's attorneys' 150 hours were spent drafting the Complaint in this action, assisting in the preparation of the motion for temporary restraining order, communicating with Shaya and co-counsel concerning this action, working with representatives of Inca Capital to trace the transfer of stolen cryptocurrency, assessing and researching the viability and appropriateness of proceeding with this action on a class basis, and otherwise working with Altior Law, P.C. in pursuit of Shaya's claims in this case. (Exh. E: Partnoy Declaration, ¶8).

As this Court has noted, in a contingency case counsel's "exercise of billing judgment … not only receives the deference afforded to any upstanding member of the bar, but also the additional deference owed to a lawyer who assumes the risk of losing the case." *Sommers-Wilson v Samsung SDI America, Inc*, 2019 U.S. Dist. LEXIS 206024, at *19 (ED Mich, Nov. 27, 2019) (Goldsmith, J.).

> It must also be kept in mind that lawyers are not likely to spend unnecessary time on contingency fee cases in the hope of inflating their fees. The payoff is too uncertain, as to both the result and the amount of the fee. It would therefore be the highly atypical … case where

> plaintiff's lawyer engages in churning. By and large, the court should
> defer to the winning lawyer's professional judgment as to how much
> time he was required to spend on the case; after all, he won, and might
> not have, had he been more of a slacker.

*Id.*, at \*19-20, *quoting Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir.

2008). Such is the case here. Shaya's counsel expended the time they believed

necessary to not only prevail on Shaya's individual claims, but to investigate and

determine whether proceeding on a class basis was viable. That it was ultimately

determined proceeding on a class basis was not in the best interests of the putative

class should not detract from the reasonableness of the time expended by counsel.

At the proposed reasonable hourly rates of $600/hour for Mr. Neuman and

Mr. Partnoy, and $395/hour for Mr. Smith and Mr. Bishop, Altior Law, P.C.'s 289.4

hours and Bishop Partnoy, LLP's 150 hours equates to baseline reasonable attorney

fees of $201,258.50. (Exh. C: Smith Declaration, ¶9). This is 66% *more than* the

$132,208.77 in actual and reasonable attorney fees sought by Shaya.

> **c.    Consideration of the Upward and Downward Deviation Factors**

Consideration of the applicable upward and downward deviation factors set

forth in *Pirgu* support the reasonableness of an award of Shaya's actual attorney fees

of $132,208.77. The relevant factors are discussed below.[2]

---

[2] Undersigned counsel does not believe factors 4-7 bear on the reasonableness of the
requested fees in this case. They include, "(4) the expenses incurred, (5) the nature
and length of the professional relationship with the client, (6) the likelihood, if

**Factor 1: The experience, reputation, and ability of the lawyer or lawyers performing the services.**

The experience and reputation of Shaya's counsel supports an upward deviation in an award of reasonable attorney fees and are set forth in the Declarations his attorneys. (Exh. C, ¶¶4-5; Exh. E, ¶¶4-7).  Mr. Partnoy is a graduate of Yale Law School, has been licensed for 31 years, and is the Adrian Kragen Professor of Law at the University of California, Berkeley. (Exh. E, ¶4).  Mr. Bishop is a graduate of the University of Chicago, Yale, and Columbia Law School, and is an Associate Professor at Duke University Law School. (*Id.*, ¶6). Mr. Neuman has been recognized as a "Top 100" attorney in Michigan since 2012. (Exh. C, ¶5). Mr. Smith has been recognized as a Super Lawyers "Rising Star" for 10 of his 15 years in practice, and as a DBusiness Top Lawyer for the past two years.  (*Id.*, ¶4).

**Factor 2: The difficulty of the case, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal services.**

Litigating claims involving the theft cryptocurrency, and the tracing and freezing its further transfer, is a novel and emerging specialty.  Few attorneys possess the knowledge, ability, or interest to undertake such matters given the uncertainty of their results and the specialized knowledge necessary to achieve favorable results. This factor weighs in favor of an enhancement to the fees to be awarded.

---

apparent to the client, that acceptance of the particular employment will preclude other employment by the lawyer, [and] (7) the time limitations imposed by the client or by the circumstances[.]" *Pirgu*, 499 Mich at 281-82.

**Factor 3: The amount in question and the results obtained.**

Should this Court grants Shaya's request for a default judgment for his claimed damages, his counsel will have obtained a judgment for the entirety of his losses. Furthermore, absent the freezing of the stolen cryptocurrency by Shaya's counsel, there would be no meaningful opportunity for recovery by Shaya. This factor weighs in support of Shaya's request for an award of reasonable attorney fees.

**Factor 8: Whether the fee is fixed or contingent.**

Counsel undertook representation of Shaya in this action on a contingent fee basis. (Exh. C: Smith Declaration, ¶3). As this Court has recognized, "because [Shaya's] lawyers took the case on a contingent fee basis, they stood to lose the opportunity cost of the time spent on this case had the law suit been unsuccessful." *Sommers-Wilson, supra,* 2019 U.S. Dist. LEXIS 206024, at *19. The risk undertaken by Shaya's counsel in pursuing this action on a contingency basis supports an award of the attorney fees sought.

**C. Shaya is Entitled to His Filing Fee as Taxable Costs**

Fed. R. Civ. P. 54(b)(1) provides, in part, "[u]nless a federal statute, these rules, or a court order provides otherwise, costs—other than attorney's fees—should be allowed to the prevailing party." 28 USC §1920 provides, "[a] judge or clerk of any court of the United States may tax as costs the following: (1) Fees of the clerk and marshal[.]". As the prevailing party, Shaya is entitled to his $405.00 fee paid to

21

the Court Clerk for the filing of his Complaint. (Exh. C: Smith Declaration, ¶12).

### D.   Shaya is Entitled to Prejudgment Interest

"In a diversity case, state law governs the district court's decision whether to award prejudgment interest[.]" *Conte v Gen Housewares Corp*, 215 F3d 628, 633 (6th Cir. 2000).  MCL 600.6013(8) provides for prejudgment interest from the date of the filing of the Complaint, "calculated on the entire amount of the money judgment, including attorney fees and other costs." *Id*.  The prejudgment interest rate is 4.392% for March 15, 2024 to June 30, 2024, and 4.359% for July 1, 2024 through present.[3]  As applied to Shaya's damages and costs of $529,240.07 this equates to $14,903.84 in prejudgment interest as of the date of this motion, as set forth below.

| Date Range | Days in Period | Rate | Per Diem | Total |
|---|---|---|---|---|
| 3/15/24 – 6/30/24 | 108 | 4.392% | $63.68 | $6,877.44 |
| 7/1/24 – 11/4/24 | 127 | 4.359% | $63.20 | $8,026.40 |

Accordingly, the Court should award Shaya $14,903.84 in prejudgment interest.

### IV.   The Court Should Continue Should Impose a Constructive Trust Over the Frozen Wallets and Order Seizure and Delivery of Assets Sufficient to Satisfy the Default Judgment

In his Complaint, Shaya sought the "[i]mpos[ition of] a constructive trust over, and order the return of, any remaining stolen assets and proceeds derived from the same to Plaintiff." (Exh. A, pp. 35-36).  Under Michigan law, "[a] constructive

---

[3] *See* https://www.michigan.gov/taxes/interest-rates-for-money-judgments

trust may be imposed where such trust is necessary to do equity or to prevent unjust enrichment…." *Kammer Asphalt Paving Co v East China Twp Sch*, 443 Mich 176, 188; 504 NW2d 635 (1993)(citation and internal quotation omitted).  This includes, "when property has been obtained through fraud, misrepresentation, concealment, … or any other similar circumstances which render it unconscionable for the holder of the legal title to retain and enjoy the property…." *Id*.

Fed. R. Civ. P. 64(a) provides, in part, "throughout an action, every remedy is available that, under the law of the state where the court is located, provides for seizing a person or property to secure satisfaction of the potential judgment." In Michigan, "[a] civil action may be brought to recover possession of any goods or chattels which have been unlawfully taken or unlawfully detained and to recover damages sustained by the unlawful taking or unlawful detention," provided the Court "determines that the claim for recovery is probably valid." MCL 600.2920. Furthermore, Fed R. Civ. P. 64(b) provides, "[t]he remedies available under this rule include the following – however designated and regardless of whether state procedure requires an independent action: attachment[,] garnishment[,] replevin[,] … and other corresponding or equivalent remedies."

Courts in the emerging area of cryptocurrency theft schemes have held that "cryptocurrency is an intangible good, qualifying it as chattel …." *Bandyopadhyay v Obei*, 2023 U.S. Dist. LEXIS 33382, at *12 (SD Fla, Feb. 28, 2023).  In addition,

Courts have ordered the imposition of a constructive trust and delivery of converted cryptocurrency to plaintiff's counsel in similar cases. *Dubey v Mandoza*, 2024 U.S. Dist. LEXIS 189784, at *17-18 (SD Fla, Oct. 18, 2024).

Here, both the imposition of a constructive trust over the stolen cryptocurrency frozen by Binance, and an order directing Binance to deliver wallet holdings sufficient to satisfy the default judgment are appropriate. Defendants acquired money and cryptocurrency from Shaya through fraud and misrepresentation, which warrants imposition of a constructive trust. *Kammer Asphalt Paving Co, supra,* 443 Mich at 188. Those stolen assets have been traced to the wallets presenting frozen by this Court's TRO and Preliminary Injunction. (Exh. B: Zach Declaration, ¶¶8-10; 13-23). No right or reason exists at law or in equity for Defendants to retain these assets, and Binance should be ordered to transfer the frozen wallet holdings to Plaintiffs' counsel or at their direction sufficient to satisfy the amount of the Default Judgment.

Finally, Fed. R. Civ. P. 62(a) provides, "execution on a judgment and proceedings to enforce it are stayed for 30 days after its entry, *unless the court orders otherwise.*" (Emphasis added). As the 2018 Advisory Committee Notes provide, "[o]ne reason for dissolving the automatic stay may be a risk that the judgment debtor's assets will be dissipated." *See also McPherson v Suburban Ann Arbor, LLC*, 2024 U.S. Dist. LEXIS 34372, at *16 (ED Mich, Feb. 28, 2024) (Lawson, J.)

(citation omitted).  As was true at the outset of this case, Shaya's only opportunity to recover the amount of a default judgment rendered by this Court is through the cryptocurrency held in the 299 Binance wallets frozen pursuant to this Court's TRO and Preliminary Injunction. (ECF Nos. 4, 10).  For the same reasons this Court granted its TRO and Preliminary Injunction, it should order that the imposition of a constructive trust and delivery of assets sufficient to satisfy the default judgment have immediate effect.  Absent such relief, Defendants could regain access to those wallets and transfer their holdings beyond the reach of Shaya and his counsel.

## CONCLUSION

For all of the foregoing reasons, Plaintiff Stephen Shaya requests this Court grant his Motion for Default Judgment.

Respectfully submitted,                    Respectfully submitted,

ALTIOR LAW, P.C.                         BISHOP PARTNOY, LLP

/s/ Matthew D. Smith                     /s/ Franklin I. Partnoy
Kenneth F. Neuman (P39429)               Franklin I. Partnoy
Matthew D. Smith (P72969)                (New York Bar No. 2557437)
Attorneys for Plaintiff                  Robert E. Bishop
401 S. Old Woodward, Suite 460           (New York Bar No. 5641964)
Birmingham, MI 48009                     Attorneys for Plaintiff
(248) 594-5252                           638 Independence Ave SE
kneuman@altiorlaw.com                    Washington, DC 20003
msmith@altiorlaw.com                     (202) 539-7061
                                         frank@bishoppartnoy.com
Dated: November 4, 2024                   bobby@bishoppartnoy.com